Marvin Wayne SNEED, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–06–00001–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 11, 2006.

Decided Nov. 21, 2006.

Rehearing Overruled Dec. 12, 2006.

Steven R. Miears, Bonham, for appellant.

Michael L. Morrow, Asst. Dist. Atty., Richard Glaser, Fannin County Dist. Atty., Bonham, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Marvin Wayne Sneed was charged with a four-count indictment alleging three offenses of sexual assault of a child and one offense of indecency with a child. A jury found him guilty on all counts and assessed punishment at three life sentences and one twenty-year sentence of confinement. On appeal, Sneed alleges the trial court erred in three respects: (1) replacing a juror with an alternate juror, (2) admitting the complainant's prior testimony, and (3) restricting closing argument. There is no challenge to the legal and factual sufficiency of the evidence. Therefore, we will discuss the relevant facts when addressing the particular legal issues raised.

## I. Replacing a Juror with an Alternate

During the second day of testimony, the State moved the trial court to excuse one of the jurors, explaining that, during the voir dire examination, the veniremembers were asked if they "had any dealings with this office or with me, and no response was made by this particular witness." The State explained that one juror had previously been placed on deferred adjudication for possession of marihuana. After a discussion with counsel, the trial court excused the juror and substituted an alternate juror over Sneed's objection. The actual question propounded to the venire on this subject during voir dire examination was: "Anybody know or been represented by, good friends with, your County Attorney Richard Glaser?"

Two statutes that apply to jurors are relevant:[1]

### Art. 36.29. If a Juror Dies or Becomes Disabled

(a) Not less than twelve jurors can render and return a verdict in a felony case. It must be concurred in by each juror and signed by the foreman. Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

TEX.CODE CRIM. PROC. ANN. art. 36.29 (Vernon 2006).

---

1. Article 36.29(b) applies in capital murder cases.

## Art. 33.011. Alternate jurors

(a) In district courts, the judge may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. In county courts, the judge may direct that not more than two jurors in addition to the regular jury be called and impaneled to sit as alternate jurors.

(b) Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn and selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.

TEX.CODE CRIM. PROC. ANN. art. 33.011 (Vernon 2006).

The United States Constitution does not require a particular number of jurors necessary to constitute a jury panel, only that the jury must be impartial. U.S. CONST. amend. VI. However, our state constitution does require a jury of twelve members for cases tried in district courts, but provision is made for the Legislature to modify the rule to authorize verdicts by less than twelve. *See Hegar v. State,* 11 S.W.3d 290, 295 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing TEX. CONST. art. V, § 13).

Before 1983, if a juror became disabled to perform the duties of a juror, by the terms of Article 36.29 the trial court could allow eleven jurors to try the case. However, the test for whether a juror was "disabled" was rather stringent. The court could exercise its discretion to complete the case with eleven members only if the juror was disabled by some physical, mental, or emotional condition which hindered the juror's ability to perform his or her duties properly. *Landrum v. State,* 788 S.W.2d 577, 579 (Tex.Crim.App.1990). Even a bias for or against any law applicable to the case did not render a juror disabled as envisioned by Article 36.29. *Carrillo v. State,* 597 S.W.2d 769, 771 (Tex. Crim.App. [Panel Op.] 1980). In 1983, the Legislature enacted Article 33.011 allowing trial courts to select alternate jurors who could be substituted if a juror became "unable or disqualified" to serve, rather than requiring that the juror must be "disabled" as in Article 36.29.

■ Sneed argues that the juror was not disabled as required by Article 36.29, and the only valid reason to remove her was if she was disqualified. To make this determination, Sneed analyzes Article 35.16. He then argues that the evidence does not show that the juror was convicted of theft or any felony, that she was under indictment or accusation for theft or any felony, that she was biased or prejudiced in favor or against the defendant, or that she had formed a conclusion about the guilt or innocence of the defendant. *See* TEX.CODE CRIM. PROC. ANN. art. 35.16(a)(2), (3), (9), (10) (Vernon 2006). Based on this premise, Sneed argues the juror was not disqualified, and the trial court erred in excusing this juror.

The State points out that the trial court has a great deal of discretion in determining if one is biased or prejudiced for or against a defendant. Normally, this issue is presented when the trial court fails to grant a challenge for cause after a venireperson has presented some information that could be considered as more favorable to one side than the other, but has not clearly stated that he or she is biased. The State cites *Anderson v. State,* 633

S.W.2d 851 (Tex.Crim.App. [Panel Op.] 1982), for the general proposition that, if bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the juror is disqualified. *Id.* at 853–54. In that case, a venireperson answered that she knew the prosecuting witnesses and initially stated that she could serve fairly. Later, she admitted that it "would be difficult" and "knowing them I would be more biased." *Id.* at 854. The defendant argued these statements showed that this venireperson was biased and the court erred in failing to excuse her. *Id.* at 853.

We agree that the trial court has discretion in determining bias. In *Anderson,* the juror also stated she would render a fair verdict and could set aside her knowledge of the State's witnesses. The appellate court found the trial court did not err in failing to excuse the juror for cause. *Id.* Here, the only thing we know about this venireperson is that she failed to answer when asked if she knew or was a good friend of, or had been represented by the State's attorney. There is simply no evidence on which to conclude the venireperson was biased as a matter of law. After this issue was presented, the trial court elected not to question this venireperson concerning any possible bias, so there is no record that might show such a bias. We do not believe this venireperson established she was biased for or against Sneed or the State. The State has not established that this juror was legally disqualified to serve.

We also recognize the rule that a juror's intentional misrepresentation of information in the voir dire process has been held as a ground for the granting of a new trial. *Von January v. State,* 576 S.W.2d 43 (Tex. Crim.App. [Panel Op.] 1978). Of course a new trial may be granted by the trial court

only on behalf of the defendant. Tex. R.App. P. 21.1. However, the Texas Court of Criminal Appeals has also held that mere familiarity with a witness is not necessarily material information. *See Decker v. State,* 717 S.W.2d 903, 907 (Tex.Crim. App.1983) (op. on reh'g).

It should be remembered that the alternate juror was chosen in the same manner as the first twelve jurors. The alternates are subjected to voir dire examination, and the parties have additional peremptory challenges which can be used in selecting the alternate jurors. Since our procedure now allows the selection of alternate jurors in the same manner as the first twelve jurors, it seems unnecessary that we should continue to require that a substitution can only be accomplished if the first juror is physically or mentally ill or disqualified. *See Ponce v. State,* 68 S.W.3d 718, 721 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd) (error to excuse juror and substitute alternate without showing of illness or disability). The State argues that, according to the provisions of Article 33.011, the substitution of an alternate juror when the original juror is "unable" to serve gives the trial court broader discretion than it had under Article 36.29 in allowing eleven jurors to conclude the case only when one juror became "disabled" to serve. While Article 33.011 does use the terminology allowing replacement when a juror is "unable" to serve, one must strain to recognize real differences in the meaning of the two words in this context.

"Unable" is defined as: not able: incapable, unqualified, incompetent, impotent, helpless. Merriam-Webster's Collegiate Dictionary 1359 (11th ed.2006).

"Disabled" is defined as: incapacitated by illness or injury; also: physically or mentally impaired in a way that substantially limits activity especially in relation to employment or education. *Id.* at 355.

We have already concluded the juror was not legally disqualified to serve. Further, there was no suggestion that she was disabled by reason of a physical, mental, or emotional problem. To conclude this juror was "unable" to serve requires an expansion of the usual understanding of that word. She did not lack the necessary power, means, or capacity to serve. The statute simply does not encompass the facts presented here. So we find that the trial court erred in substituting the alternate juror in this instance. It appears the juror was excused because she had apparently failed to reveal she knew the prosecutor (although that was never clearly established). Several cases have discussed the lack of statutory guidance and other problems the courts confront in this field.[2]

When a trial court faces such a situation, there should be clear rules as to what action the court should take. Our courts should not be required to parse fine distinctions between the words "disabled" and "unable" in order to use a fully qualified alternate juror. We can perceive no constitutional impediment in a procedure allowing the replacement of one fully qualified juror with another, even without the establishment that the first is physically disabled or even unable to serve. This is an issue that regularly occurs in courtrooms across the State of Texas. When jurors are summoned to serve, they come into an environment that is foreign and intimidating to many. It is not uncommon, particularly in smaller counties, for a juror to recognize someone involved in the case after he or she sees that person (after being seated on the jury). *See Franklin v. State*, 12 S.W.3d 473 (Tex.Crim.App.2000). Additionally, family emergencies occur, as well as a myriad of events, that may in fact interrupt jury service. We recommend the Legislature consider amending the statute concerning the substitution of duly qualified alternate jurors for jurors on the panel who may have developed legitimate reasons to be excused after the jury has been impaneled. This would include a family emergency, a failure to divulge material information during voir dire examination, and other reasons that establish good cause for excusing the juror and replacing him or her with another duly qualified juror. This requires the exercise of judicial discretion by our trial courts, but since that is the essence of a judge's role, we believe the trial courts of this state will properly exercise their discretion in these matters. In the event of clear abuses, the appellate process is available. Other state court systems have operated with such rules for many years.[3] If a clear set of rules existed for trial courts to follow in substituting an alternate juror when there is good cause to replace the original juror, we believe many difficulties could be avoid-

---

2. *Broussard v. State*, 910 S.W.2d 952 (Tex. Crim.App.1995) (alternate juror replaced an ill juror who had work-related problems before jury was sworn, even though no statutory provision governed, replacement was approved); *Brown v. State*, 183 S.W.3d 728 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (court failed to substitute alternate juror who spoke to policeman-witness, record showed no bias, proper to refuse to substitute alternate); *Winfrey v. State*, 104 S.W.3d 282 (Tex. App.-Eastland 2003, pet. ref'd) (disqualified juror replaced by next venireperson from original panel, no statutory authority, acceptable option); *Gentry v. State*, 881 S.W.2d 35 (Tex.App.-Dallas 1994, pet. ref'd) (ill juror replaced by next eligible juror-held improper procedure); *Williams v. State*, 631 S.W.2d 955 (Tex.App.-Austin 1982, no pet.) (selected replacement juror from panel of five from central jury, no statutory provision, approved).

3. *See* David B. Sweet, Annotation, *Propriety, Under State Statute or Court Rule, of Substituting State Trial Juror with Alternate After Case has been Submitted to Jury*, 88 A.L.R.4th 711 (1991).

ed.[4] Further, an approved procedure for substituting alternate jurors would encourage all courts to select alternate jurors.

■■■ With that said, we will consider whether the error we find here requires reversal of this trial. We do not believe it does. We have already expressed that, to embody a constitutional violation, the trial court's error would have to produce a biased jury. Neither the United States nor the Texas Constitution prescribes the manner in which juries are selected. *See Hegar*, 11 S.W.3d at 295. This error involves the application of a statutory scheme and is a nonconstitutional error. *Ponce*, 68 S.W.3d at 722.[5] Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any nonconstitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex.R.App. P. 44.2(b). The record here does not show any taint from the substituted juror. The juror was subjected to the same selection process, was properly sworn, and heard all of the evidence. In an analogous situation, if the trial court erroneously grants a challenge for cause for the State, reversal only occurs if the defendant shows that he or she was deprived of a lawfully constituted jury. *Feldman v. State*, 71 S.W.3d 738 (Tex. Crim.App.2002); *Jones v. State*, 982 S.W.2d 386, 394 (Tex.Crim.App.1998). Sneed has not shown that he was deprived of a lawfully constituted jury or that any of his substantial rights have been affected. Therefore, in accordance with our rules, the error is disregarded.

4. For instance, if it is discovered that a juror has failed to reveal material information during voir dire, or if a juror recognizes a participant in the trial, a substitution by a qualified alternate would avoid a trial that may be unfair and require a retrial. It also ensures the jury will be composed of twelve members rather than attempting to invoke Article 36.29 to allow eleven members to return a verdict.

## II. Admission of Complainant's Prior Testimony

### A. Subject of Impeachment

This case was tried twice. In the first trial, a jury was unable to reach a unanimous verdict and the trial court granted a mistrial. The testimony of the complaining witnesses had been transcribed for the second trial. In this case, the complaining witness testified fully on direct examination. Cross-examination included an attempt to impeach the witness by using her testimony given in the first trial. The State objected to such impeachment, arguing that this witness was a child and that the defense attorney was intimidating her. A discussion ensued between counsel and the trial court, and the State's attorney suggested that, if prior testimony was to be used for impeachment, it would "allow us to put it in totality, so it's not taken out of context." The court then asked the defense attorney, "What is your position on whether the document is able to be read in its entirety to a jury after a witness has testified?" and suggested the attorneys should research the issue. An issue in the case was that, even though the witness testified at the prior trial that the sexual assaults occurred over a period of years, from a medical examination of the witness, there was no physical evidence of the assaults. The defense attorney asked whether the witness testified that:

Q. . . . [Sneed] would put his bad spot in your pee-pee; is that right?

5. The error in this case did not deprive Sneed of a twelve-member jury. Even though Sneed alleges it was error to dismiss the original juror, the jury was composed of twelve properly selected members. *See Chavez v. State*, 91 S.W.3d 797, 801 (Tex.Crim.App.2002) (citing *Rivera v. State*, 12 S.W.3d 572, 579 (Tex. App.-San Antonio 2000, no pet.)).

A. Yes, sir.

Q. Would he do that every time he had sex with you?

A. Not every time.

To impeach that testimony, defense counsel used the following portion of her prior testimony:

Q. ... "Would he always put his bad spot in your pee-pee?" And what was your answer?

A. "Yes."

Q. And the question, "He would?" And speak up. What was your answer?

A. "Yes."

Q. And the question, "Okay. And this would happen several times a week for years; is that right?"

A. "Yes, sir."

When the defense attorney completed cross-examination of the witness, the State announced to the court, "I intend to offer the remainder of—the remainder of [the witness'] testimony in the prior hearing. And I think Rule 107, the rule of optional completeness does that." After defense counsel disagreed with that analysis of Rule 107, the court stated, "I'm going to allow the reading of the prior testimony of this particular witness." The defense attorney objected. The State then read the entire testimony of the complaining witness from the previous trial, consisting of approximately fifty-two transcribed pages of testimony.

**B. Error Preservation**

1. Timeliness

■ The State first argues that the issue was not preserved for appeal because Sneed did not properly and timely object. The question as to the admissibility of the prior testimony was discussed by counsel and the trial court several times. On the first day of trial, the State requested a clarification as to the use of the impeach-

ment testimony. The State objected to the defense attorney's attempted use of the impeaching evidence in questioning witnesses other than the complainant. The trial court indicated that the objections would be taken as they developed during the trial. The State then suggested that a remedy would be to offer in its entirety the previous testimony of the complainant. The defense attorney objected, specifically pointing out the prior statement contained references to a "knife incident." The trial court then observed, "It is the Court's impression that the document in its entirety is admissible." Later, the trial court said the prior testimony would be "handled as a deposition would be." The trial court finally stated that the prior testimony would come in "unless there is somebody here who has information to show me otherwise." The next day, the events quoted earlier, involving the impeachment of the witness, occurred. The trial court asked counsel to provide legal authorities on the issue of admitting the entire prior testimony of the witness after the impeachment. Ultimately, the trial court admitted the entire testimony of the complaining witness from the previous trial. The trial court did not admit any evidence from the previous trial until the witness was cross-examined. In fact, the trial court advised counsel to provide legal research on the issue. The issue regarding the admissibility of the complainant's prior testimony was still a live one until after the complainant testified, at which time the trial court formally admitted her entire prior testimony. We do not believe Sneed's objection was untimely.

2. Proper Objection

The State correctly represents that no hearsay objection to this particular evidence was ever specifically presented by defense counsel. Rule 33.1 of the Texas Rules of Appellate Procedure provides

that a complaint must be made to the trial court by a timely request, objection, or motion that: "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; ...." Tex.R.App. P. 33.1(a). Here, the State moved the trial court to allow the introduction of the entire prior testimony by stating: "I think Rule 107, the rule of optional completeness does that." This framed the entire debate that occurred thereafter with the trial court concerning the admissibility of the prior testimony. Defense counsel argued that the prior testimony could be used for impeachment of a witness and acknowledged that, if he used part of the statement, the opposing side was entitled to read the portions to complete it, but not the entirety of the previous testimony. The court then ruled that the entire record of the prior testimony of the complainant could be read to the jury, noting the defense's objection. The State now argues that, since Sneed did not specifically object that the prior testimony was hearsay, he waived the error.

■ Was it necessary for counsel to specifically utter the word hearsay during his objections, or was it apparent from the context that Sneed was objecting that the previous testimony was inadmissible as hearsay? From the outset of the second trial, there seemed to be a concern about how the testimony from the first trial would be handled. When it was proffered, several conversations between the court and counsel had already taken place. The State announced that Rule 107 of the Texas Rules of Evidence was its rationale for admissibility. Sneed objected that it did not meet the test for admissibility as required by that rule. The court overruled the objection and admitted the entire rec-

ord of the complainant's previous testimony. If this evidence had been independently admissible, it would not have been necessary for the State to offer it under Rule 107. Indeed, the usual reason to invoke Rule 107 is to present evidence of a "writing or recorded statement" other than one made by the declarant while testifying at the trial or hearing and offered to prove the truth of the matter asserted. Tex.R. Evid. 107. One function of Rule 107 is to allow evidence that otherwise would be inadmissible hearsay. *Wright v. State*, 28 S.W.3d 526, 535–36 (Tex.Crim. App.2000). From reading the record of this trial, we believe it was apparent from the context that the trial court and counsel had moved beyond a consideration of whether the complainant's prior testimony was hearsay to a debate on whether, by the terms of Rule 107, it constituted admissible evidence regardless of its hearsay nature. Sneed properly objected that the testimony did not meet the requirements of Rule 107. We believe the alleged error has been preserved for appeal.

## C. Rule of Optional Completeness

The underlying rationale for the rule of optional completeness is not new. In 1918, the Texas Court of Criminal Appeals instructed a trial court as follows:

Upon another trial this matter should not occur as here detailed. If appellant introduced isolated portions of this examining trial testimony as impeachment or in contradiction of the girl's testimony on the final trial, then the state would have the right to introduce such portions of her examining trial testimony as bore upon and were explanatory of those put in evidence by appellant, but that portion of the examining trial testimony that did not shed light upon those introduced by defendant would not be admissible.

*Earnest v. State,* 83 Tex.Crim. 257, 202 S.W. 739, 741 (1918).

■ In the present case, counsel for the defendant attempted to impeach the complaining witness on one specific portion of her testimony. During the second trial, counsel asked the witness if she testified that Sneed "put his bad spot in your pee-pee; is that right? A. Yes, sir. Q. Would he do that every time he had sex with you? A. *Not every time.*" (Emphasis added.)

Apparently defense counsel thought that testimony conflicted with the witness' previous testimony and directed her to a particular statement on page fifty-one in which she was asked, "Would he *always* put his bad spot in your pee-pee?" ... A. "Yes." So, in one instance, she agreed that it occurred always; during the second trial, she stated, "[n]ot every time." That appears to be the extent of the use of the witness' prior testimony for impeachment.

By contrast, the evidence that the trial court allowed the State to present by virtue of Rule 107 was the entire testimony of the witness at the previous trial. Rule 107—the rule of optional completeness—is as follows:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

Tex.R. Evid. 107.

The Texas Court of Criminal Appeals has addressed similar situations several times. In *Jernigan v. State,* 589 S.W.2d 681 (Tex.Crim.App. [Panel Op.] 1979), the testifying witness had been previously deposed. On cross-examination, opposing counsel attempted to impeach the witness with specific portions of the deposition. The State then moved to introduce the entire deposition, consisting of approximately twenty pages. The Texas Court of Criminal Appeals found that admission of the entire deposition "[p]lainly, ... was not admissible at the instance of the State since much of it was in no way related to the limited portions presented by appellant in attempting to impeach the witness." [6] *Id.* at 694. Rule 107 limits evidence to the "same subject" as that offered by the opposing party.

■ The purpose of this provision is to reduce the possibility of the fact-finder receiving a false impression from hearing the evidence of only a part of the conversation, writing, act, or declaration. The theory behind the rule is that, by allowing the jury to hear the rest of the conversation on the same subject, the whole picture will be filled out, removing any misleading effect which may have occurred from the introduction of only a portion of the conversation. Obviously, this purpose is achieved by receipt of the balance of the conversation on the same subject. But to permit under this rule the introduction of other portions of such a conversation wholly unrelated to the matter initially presented cannot contribute to achievement of the purpose of the rule. Consequently, it is improper to rely on this rule as authority for the introduction of such unrelated portions. *Roman v. State,* 503 S.W.2d 252, 253 (Tex. Crim.App.1974). Other cases with similar holdings are: *Goldberg v. State,* 95 S.W.3d

---

**6.** The statute being reviewed was Article 38.24 of the Texas Code of Criminal Procedure, which was the predecessor to Rule 107 of the Texas Rules of Evidence.

345, 387 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (questioning detective about conversation with defendant regarding football game does not allow defendant to present entire conversation with defendant about the events of day—unnecessary to correct a false or incorrect impression of witness' testimony); *Pinkney v. State*, 848 S.W.2d 363, 367 (Tex.App.-Houston [1st Dist.] 1993, no pet.) (error to introduce entire written statement of witness who had been questioned only on portions of statement).

More recently, the Texas Court of Criminal Appeals has explained that "opening of the door" by defense counsel questioning a witness regarding a videotape recording does not require the automatic admission of the entire videotape. The court stated the "plain language of Rule 107 indicates that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'" *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex.Crim.App.2004) (citing TEX.R. EVID. 107). In a footnote, the court announced that cases which broadly stated "that the whole conversation may be shown is not supported by the language of the statute and should not be relied upon in the future." *Sauceda*, 129 S.W.3d at 123 n. 5.

Here, the impeachment related to one statement of the witness. There was no showing that the entire prior testimony was either on the same subject or was necessary to correct a false or incorrect impression of the witness' testimony.

The State argues that the questions of the defense attorney "opened the door" for the witness' entire previous testimony to put it in the proper context, citing *Credille v. State*, 925 S.W.2d 112 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd), which allowed an entire videotape of an inter-

view. The Texas Court of Criminal Appeals has construed *Credille* to stand for the proposition that, when the defense references specific statements made by the complainant during a videotaped interview which, if taken out of context, could create the possibility of the jury receiving a false impression, the entire videotaped interview is properly admissible. *Sauceda*, 129 S.W.3d at 123. Here, the State did not suggest to the trial court, and has not argued here, that the impeachment evidence presented a false impression of the testimony of the witness.

The State argues that the previous testimony of the witness is not hearsay as defined in TEX.R. EVID. 801(d) as a statement "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Based on that definition, and without reference to any authority, the State urges that, because the complainant testified at both the previous trial and the present trial, her prior testimony was not hearsay, citing Rules 801 and 802 of the Texas Rules of Evidence. We disagree. Rule 801(e) classifies certain prior testimony as nonhearsay in very limited instances, none of which the State even argues is applicable here. *See* TEX.R. EVID. 801(e). Rule 804 sets out an exception to the hearsay rule for some former testimony "if the declarant is unavailable." TEX.R. EVID. 804(b). An important requirement for using Rule 804(b) as an exception to the hearsay rule is that the witness who testified previously is now unavailable, which is inapplicable to this situation. If the State's argument is correct (that all former testimony is not hearsay), Rule 804(b) would be unnecessary. For the reasons stated above, we hold that the trial court erred in admitting the entire record of the complainant's testimony at the earlier trial, as it was not admissible

by the terms of Rule 107. *See* Tex.R. Evid. 107.

### D. Harm Analysis

■ Now we must confront the difficult issue of whether the error was of such magnitude as to require a reversal for another trial. As we previously discussed, a nonconstitutional error is disregarded unless it affects a substantial right. *See* Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Further, in *Johnson v. State*, 967 S.W.2d 410 (Tex.Crim.App. 1998), the Texas Court of Criminal Appeals stated: "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Id.* at 417.

Here, we recognize that the complainant was effectively allowed to testify twice—her testimony in open court at this trial and her previous testimony from the earlier trial. The State argues this problem is ameliorated due to unusual circumstances peculiar to this case.

The testimony of the complainant at the first and second trial was very similar. The major difference in the testimony was that the "knife incident" was given in more detail in the previous testimony than in the present one. In the first trial, the complainant described how Sneed slapped her, pulled her hair, and held a steak knife to her head. However, other testimony also was introduced during this trial concerning the "knife incident." For instance, during cross-examination of Officer Kelly Warren of the Bonham Police Department, Sneed asked Warren about the allegation that Sneed "stuck a knife to the kid's head." Sneed then offered the videotape of Warren's interview of Sneed made during the investigation of the alleged aggravated assault, which was played to the jury. In the videotape, Sneed acknowledged that an event involving a knife occurred between him and the complainant. According to Sneed, the child refused to do her chores and he took a small butter knife and "poked her in the head" and then pushed her.

Additionally, recorded statements given by the complainant and her sister to the Child Protective Services' worker were introduced into evidence. While numerous objections were made to those videotapes at trial, no complaint is made on appeal concerning their admissibility, so we are not called on to address that issue. The videotape evidence that was introduced consisted of four videotapes: (1) an interview of the complainant October 4, 2002, (2) an interview of the complainant's sister November 20, 2002, (3) an interview of the complainant April 4, 2003, and (4) an interview of the complainant's sister April 17, 2003. Apparently, the jury was allowed to view the videotapes in a room adjoining the courtroom under the watch of the bailiff—a procedure approved by counsel for the State and Sneed. During the April 4, 2003, videotape of the complainant, she described to a social worker the sexual assaults in the same manner, or even in more detail, as described in live testimony and her testimony from the previous trial. Also received into evidence without objection was a notation made March 28, 2003, by counselor Michelle Griffith concerning the complainant's report of the sexual assaults. In that report, Griffith quotes the complainant reporting an outcry against Sneed that he would call her into his room and would "try to have sex with me." Additionally, the State introduced, without

objection, the report of the sexual assault examiner, which quoted the complainant as follows: "My dad, he had sex with me. He put his wienie in my pee-pee.... Started when I was around 4 years old and it never stopped, until I was 11 years old.... He would lick my pee-pee and my boobs. He told me not to tell anybody or he would get in trouble."

In view of the numerous other instances of testimony admitted concerning the complainant's allegations toward Sneed, and after examining the record as a whole, we think the error in admitting the complainant's prior testimony at most could have had only a slight effect on the jury and therefore is not reversible error.

### III. Limitation of Jury Argument

 Immediately before the attorneys were to present their arguments to the jury at the guilt/innocence stage, the State moved the court to limit defense counsel from arguing about "other cases where people were wrongly accused." Defense counsel responded that he should be allowed to argue "your thoughts, your experiences ... and analogies." The trial court then sustained the objection and instructed that no argument should be allowed on "anything that's outside the record .... And other cases of wrongly convicted and spending time wrongly convicted will not be allowed."

Sneed argues that counsel should be given wide latitude in drawing inferences from the evidence so long as they are fair, legitimate, and offered in good faith. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988). He further argues that counsel should be allowed to make references to "history, fiction, personal experience, anecdotes, Bible stories or jokes." On that premise, Sneed argues it is common knowledge that, throughout history, both men and women have been wrongfully convicted, quoting *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). However, Sneed does not point to any specific argument that he was denied.

In general, appellate review requires a record to review. This issue illustrates the rationale for that requirement. After the court announced its view regarding the general subjects that were not authorized for argument, no offer was made as to the particular argument counsel proposed. This is important because it is difficult, and probably improper, for an appellate court to speculate as to what specific argument counsel was denied. The trial court admonished counsel not to argue "outside the record"—a traditional basis for excluding jury argument. More specifically, counsel was directed not to discuss "other cases of wrongly convicted." In general, that may be a reasonable limitation, as it is not permissible to discuss the specific facts of a particular case (which would necessarily be outside the record) and then compare those with this case. However, it would not seem improper to note universally recognized instances of wrongful convictions (e.g., Salem witch trials, Sir Thomas More) when asking the jury to carefully and deliberately evaluate the evidence before returning a verdict. The point is—since there is no offer of the argument—we do not know what reference counsel might have made and whether that particular reference was proper or improper. Therefore, we conclude, without such an offer of the proposed argument, we cannot determine that error was committed. The point of error is overruled.

For the foregoing reasons, we affirm the judgment of the trial court.