**Opinion issued May 18, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00246-CR

————————————

**JESSE CINCENEROS GARZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Case No. 13CR3041

## MEMORANDUM OPINION

A jury found appellant, Jesse Cinceneros Garza, guilty of the offense of

possession with intent to deliver a controlled substance, namely, cocaine, weighing

more than four grams but less than two hundred grams.[1]  After appellant pleaded true to the allegation in an enhancement paragraph that he had previously been convicted of a felony offense, the jury assessed his punishment at confinement for seventeen years.  In two issues, appellant contends that the trial court erred in denying his motion to suppress evidence and excusing a seated juror.[2]

We affirm.

## Background

Texas Department of Public Safety ("DPS") Trooper M. Arce testified that on November 7, 2013, while on patrol around 9:32 p.m., he saw a sport utility vehicle ("SUV") make a left turn onto Highway 146 from the "Crazy Horse" club.  As Arce drove behind the SUV, he twice saw the front and back right-side tires "cross[] over" the "lane divider" into the right lane and then "c[o]me back."  At an intersection, the SUV made a left turn and pulled into a Jack-in-the-Box restaurant's parking lot.  Arce activated his patrol car's emergency equipment and initiated a traffic stop.  Arce explained that he believed the driver of the SUV could be intoxicated because he saw the SUV "weaving," it was nighttime, he had previously arrested an

---

[1]    *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), (d) (Vernon 2010).

[2]    *See* TEX. CODE CRIM. PROC. ANN. arts. 33.011(b), 36.29 (Vernon Supp. 2016).

intoxicated driver on the same highway on which the SUV was traveling, and the SUV appeared to be coming from the Crazy Horse, a club that serves alcohol.

Trooper Arce further testified that when he approached the SUV, he smelled an "odor of burnt marijuana coming from the car." After appellant exited the SUV, he consented to a search of it and acknowledged that he had been weaving while driving. During his search of the SUV, Arce found, "in between the [driver's side] front seat and the center console," a bag containing twenty-eight "smaller half-gram" baggies of a "white powdery substance." When Arce asked appellant about the baggies, he responded, "I don't know what that is, but it looks like cocaine to me." (Internal quotations omitted.) Arce conducted a field test of the "white powdery substance," and it tested positive for cocaine.

Trooper Arce also explained that, based on his training and experience as a law enforcement officer, twenty-eight half-gram baggies of cocaine is not "indicative of personal use." And he recovered from appellant's SUV a large amount of cocaine. Arce did note that appellant denied that the cocaine was his.

Brian Nacu, a forensic scientist previously employed by the DPS crime lab in Houston, testified that he performed a controlled substance analysis in this case. Nacu tested eight of the twenty-eight baggies found in appellant's SUV and determined that each baggie contained cocaine, weighing a total of 4.27 grams.

**Suppression of Evidence**

In his first issue, appellant argues that the trial court erred in denying his motion to suppress evidence because Trooper Arce did not have reasonable suspicion to stop him for failing to maintain a single lane. *See* TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon 2011) ("An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely.").

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.* We generally consider only the evidence adduced at the suppression hearing unless the parties consensually re-litigate the issue at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility, and it may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, a trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling. *Walter v.*

4

*State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000).  We give almost total deference to a trial court's implied findings, especially those based on an evaluation of witness credibility or demeanor.  *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).  We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case.  *Id.* at 447–48.

Prior to trial, appellant moved to suppress "any and all evidence which relates to [his] arrest," specifically, the cocaine that Trooper Arce found in appellant's SUV. The trial court denied appellant's motion, stating, "[o]n these facts given . . . both from Officer Vega and from Trooper Arce, I believe that [the State] has established . . . specific or articulable facts that would lead a person to conclude that there might be an issue of intoxication."

At the pre-trial hearing on appellant's motion, Trooper Arce testified that on November 7, 2013, while on patrol at 9:32 p.m., he saw appellant's SUV leave the Crazy Horse club and turn onto Highway 146.  While following behind appellant's SUV, he twice saw its right-side front and rear tires "cross over into the right lane" and then return "back" to the lane in which appellant was driving.  When appellant then made a left turn at an intersection and pulled into the parking lot of a Jack-in-the-Box restaurant, Arce initiated a traffic stop.  Arce explained that he believed that appellant was intoxicated because of the time of night, he saw appellant

5

"coming from [the] Crazy Horse," a club that Arce knew served alcohol, and he saw appellant's SUV "swerv[e]" twice.

On cross-examination, Trooper Arce noted that appellant's car turned onto Highway 146 from the street next to the Crazy Horse, rather than directly from the Crazy Horse parking lot. However, Arce also explained that "from the distance" where his patrol car was located, "it looked like [appellant had] pulled out of [the] Crazy Horse." Arce also noted that as appellant drove his car on Highway 146, no other cars were traveling in the lane next to him and appellant did not put "anybody in danger" when he swerved his car.

A traffic stop by a law enforcement officer "amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). However, a law enforcement officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328. In order to stop or briefly detain an individual, an officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *see also Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). Instead, an officer must have "reasonable suspicion" that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488,

492 (Tex. Crim. App. 2005); *see also Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) ("To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have reasonable suspicion." (internal footnotes omitted) (internal quotations omitted)). Reasonable suspicion exists if the law enforcement officer has "specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Abney*, 394 S.W.3d at 548 (internal quotations omitted).

The reasonable suspicion standard is wholly objective; the subjective intent of the law enforcement officer conducting the investigation is irrelevant. *Hamal*, 390 S.W.3d at 306; *Ford*, 158 S.W.3d at 492. The standard requires only "some minimal level of objective justification" for the stop. *Hamal*, 390 S.W.3d at 306 (internal quotations omitted). A reasonable-suspicion determination is made by considering the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93. Reasonable suspicion may exist even where the conduct of the person detained is "as consistent with innocent activity as with criminal activity." *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011) (internal quotations omitted).

We note that there is no requirement that a traffic law be violated before a law enforcement officer has reasonable suspicion to justify a stop of a car. *State v. Alderete*, 314 S.W.3d 469, 473 (Tex. App.—El Paso 2010, pet. ref'd); *James v.*

7

*State*, 102 S.W.3d 162, 172 (Tex. App.—Fort Worth 2003, pet. ref'd); *Cook v. State*, 63 S.W.3d 924, 929 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *see also Nevedomsky v. State*, No. 01-12-00105-CR, 2013 WL 655194, at *4 (Tex. App.—Houston [1st Dist.] Feb. 21, 2013, pet. ref'd) (mem. op., not designated for publication). Instead, "an officer may be justified in stopping a vehicle based upon a reasonable suspicion of driving while intoxicated, which is a penal offense," even though the driver of the car has not violated a traffic law and has not endangered other drivers. *Alderete*, 314 S.W.3d at 473; *see also James*, 102 S.W.3d at 172; *Jewell v. State*, No. 02-13-00418-CR, 2014 WL 3408664, *3 (Tex. App.—Fort Worth July 10, 2014, no pet.) (mem. op., not designated for publication); *Nevedomsky*, 2013 WL 655194, at *4.

Here, the facts, given the totality of the circumstances and viewed in the light most favorable to the trial court's ruling, support the trial court's conclusion that Trooper Arce had reasonable suspicion to stop appellant to investigate whether he was driving while intoxicated. *See Leming v. State*, 493 S.W.3d 552, 564–65 (Tex. Crim. App. 2016) (holding law enforcement officer had reasonable suspicion to investigate potential intoxication where car drifted back and forth within its lane); *Foster v. State*, 326 S.W.3d 609, 613–14 (Tex. Crim. App. 2010) (considering time of day, location, and defendant's driving in holding law enforcement officer had reasonable suspicion to believe defendant may have been intoxicated); *Curtis v.*

8

*State*, 238 S.W.3d 376, 381 (Tex. Crim. App. 2007) (holding rational inference from observing car "weaving in and out of his lane several times, over a short distance, late at night" driver intoxicated and such circumstances justified stop); *Gajewski v. State*, 944 S.W.2d 450, 452 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ("Although not an inherently illegal act, when the officer observed [defendant]'s car weaving between traffic lanes, reasonable suspicion existed to believe [defendant] was driving the motor vehicle while intoxicated . . . so as to justify the temporary stop of defendant's car.").

Notably, any possible innocent explanation for a driver's unusual driving behavior does not deprive a law enforcement officer of reasonable suspicion to investigate the possibility of criminal conduct, such as driving while intoxicated. *See Leming*, 493 S.W.3d at 564–65. And, here, Trooper Arce articulated "something more than an inchoate and unparticularized suspicion or hunch" that gave rise to an objective justification for the stop of appellant's car. *See Foster*, 326 S.W.3d at 614 (internal quotations omitted).

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

We overrule appellant's first issue.

**Disabled Juror**

In his second issue, appellant argues that the trial court erred in excusing juror number five on the ground that she was disabled and replacing her with an alternate juror because she "did not lack the necessary power, means, or capacity to serve" and "[n]othing in the record demonstrates that she was unable to deliberate or incapable of fulfilling her duties as a juror." *See* TEX. CODE CRIM. PROC. ANN. arts. 33.011(b), 36.29 (Vernon Supp. 2016).

A trial court has the discretion to determine whether a juror has become disabled and to seat an alternate juror. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29; *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). The code of criminal procedure provides that alternate jurors shall replace jurors who, before the jury renders a verdict regarding a defendant's guilt or innocence, "become or are found to be unable or disqualified to perform their duties." TEX. CODE CRIM. PROC. ANN. art. 33.011(b); *see also Sandoval v. State*, 409 S.W.3d 259, 279 (Tex. App.—Austin 2013, no pet.) (Texas law requires "when a regular juror becomes unable or disqualified to perform [her] duties," she shall be replaced with alternate juror). "Although the statute does not define 'unable to perform,' appellate courts have concluded that 'unable' as used in Article 33.011 is indistinguishable from 'disabled' as used in Article 36.29." *Whitehead v. State*, 437 S.W.3d 547, 554 (Tex. App.—

Texarkana 2014, pet. ref'd); *Sandoval*, 409 S.W.3d at 279. The Texas Court of Criminal Appeals,

> has interpreted Article 36.29 to require that a disabled juror suffer from a physical illness, mental condition, or emotional state that would hinder or inhibit the juror from performing his or her duties as a juror, or that the juror was suffering from a condition that inhibited h[er] from fully and fairly performing the functions of a juror.

*Scales*, 380 S.W.3d at 783 (internal quotations omitted).

We review the trial court's decision to replace a juror for an abuse of discretion. *Id.* at 784; *see also Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003). The trial court is the sole fact-finder and judge of the credibility of the testifying juror. *Scales*, 380 S.W.3d at 784. However, the trial court's decision must be sufficiently supported by the record, and we may not presume the court made a proper decision. *Id.* The trial court's "ruling must be upheld if it is within the zone of reasonable disagreement." *Id.* Accordingly, we may not substitute our own judgment for that of the trial court. Instead, we are to assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable. *Id.*; *Whitehead*, 437 S.W.3d at 554. Absent such an abuse of discretion, no reversible error will be found. *Scales*, 380 S.W.3d at 784; *Routier*, 112 S.W.3d at 588.

At trial, after the jury began deliberating, but prior to it rendering a verdict, the jury sent the following communication to the trial court:

11

One juror, #5 . . . discovered from the evidence & video that [appellant] is a neighbor (2 blocks from her house).

She has expressed concern that she is uncomfortable making a decision either way guilty or not guilty.  Is it possible for her to be excused for this reason?

The trial court then held a hearing outside the presence of the jury.

THE COURT:　　　　　　　All right.  We're back on the record in the absence of the jury.  [Appellant] is present and represented by counsel.

I have received a note from the Presiding Juror with a couple of questions.  One indicates that Juror No. 5 . . . based on the evidence and video and having started going over it during deliberations has realized that [appellant] lives within two blocks of her.  She is very uncomfortable about that and wanted to know if she could be excused.

I have spoken to her privately.  She said she learned of this or realized this after the deliberations were underway.  She is -- she will not use the word "afraid," but she said she is very anxious about the situation.  Would prefer not to continue to deliberate and thinks that it would impact her in doing so.

We do have an alternate.  And so, my initial thought would be to replace [juror number five] with the alternate . . . and instruct them that they need to start all over in their deliberations with the new juror.

Is there any objection from the State with that process?

12

[The State]: There is no objection from the State on that process, Judge. I think we would be well in our right to move in that direction looking at Article 33.011 regarding alternate jurors. Under Section B it says that if any of them become or are found to be unable or disqualified to perform their duties, I think based on the note received by the Court that she has described or informed the Court that she is unable to perform her duties. And at this time I think we're well within our right to move towards the alternate juror. So, the State would request that.

. . . .

[Appellant's counsel]: In response to that, your Honor, I would say that just the fact that she's feeling uncomfortable when she's deliberating the guilt or innocence of the case, I don't believe gives a juror -- would substantiate good cause for not performing their duties.

There is absolutely no evidence to support that she knows [appellant] or that [appellant] knows her. And for that reason, you know, jury deliberation becomes uncomfortable. Jury deliberation puts people in situations where they second guess themselves. And so, I don't believe that this rises to the level of, to have a good cause for not performing their duties and that's why we should replace her. So, I would object to the alternate going in at this point in time.

THE COURT: Okay. Well, I think the fact that she has asked to be replaced, does say that it makes her very anxious and given that I have confirmed that in my discussion with her, I think that she's not able to perform her duties.

13

So, I guess we will contact [the alternate juror]. Have her come back up, and we will allow [juror number five] to be replaced.

. . . .

THE COURT: Okay. It is my ruling that we will replace [juror number five] with the alternate . . . given the jury communication we have received and my conversation with [juror number five].

Appellant asserts that code of criminal procedure article 33.011(b) "simply does not encompass the facts presented here, namely that [juror number five] was 'uncomfortable' or 'anxious.'" However, even were we to conclude that the trial court erred in excusing juror number five and replacing her with the alternate juror, appellant must still show that he was harmed by the trial court's action. *See Ponce v. State*, 68 S.W.3d 718, 721 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (such error does not automatically mandate reversal).

Neither the United States nor the Texas Constitution prescribes the manner in which juries are selected. *Hill v. State*, 475 S.W.3d 407, 408 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Sneed v. State*, 209 S.W.3d 782, 788 (Tex. App.—Texarkana 2006, pet. ref'd). Because any error in dismissing one juror and replacing her with an alternate juror involves the application of a statutory scheme, it is not of a constitutional dimension. *Hill*, 475 S.W.3d at 408; *Sneed*, 209 S.W.3d at 788; *see also Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998); *Bina v. State*, No.

14

01-06-00557-CR, 2008 WL 256897, at *3 (Tex. App.—Houston [1st Dist.] Jan. 31, 2008, pet. ref'd) (mem. op., not designated for publication) ("The erroneous dismissal of a juror is nonconstitutional error governed by Rule of Appellate Procedure 44.2(b)[.]").

Texas Rule of Appellate Procedure 44.2(b) provides that any nonconstitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b); *Hill*, 475 S.W.3d at 408–09. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). It is appellant's burden to show that his substantial rights have been affected. *See Merritt v. State*, 982 S.W.2d 634, 637 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd, untimely filed).

Here, the record does not show any taint from the alternate juror being seated on the jury panel in juror number five's place. *See Sneed*, 209 S.W.3d at 788; *Ponce*, 68 S.W.3d at 722; *Hegar v. State*, 11 S.W.3d 290, 295 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The trial court's replacement of juror number five with the alternate juror did not deprive appellant of a twelve-person jury. *See Hill*, 475 S.W.3d at 409; *see also Bina*, 2008 WL 256897, at *3. And the alternate juror was subject to the same jury-selection process, was properly sworn, heard all of the evidence, and replaced juror number five on the jury panel before the jury rendered

15

a verdict.  *See* TEX. CODE CRIM. PROC. ANN. art. 33.011(b); *Hill*, 475 S.W.3d at 409; *Sneed*, 209 S.W.3d at 788; *see also Bina*, 2008 WL 256897, at *3.  The trial court also instructed the jury to begin deliberations anew with the alternate juror in place. *See Hill*, 475 S.W.3d at 409.

We note that in an analogous situation, if a trial court were to erroneously grant the State's challenge for cause of a prospective juror during voir dire, reversal would only occur if the defendant showed that he was deprived of a lawfully constituted jury.  *See Hill*, 475 S.W.3d at 409; *Sneed*, 209 S.W.3d at 788; *see also Bina*, 2008 WL 256897, at *3.  Notably, appellant has not argued, and the record does not show, that he was deprived of a lawfully constituted jury or that any of his substantial rights were affected.  *See* TEX. R. APP. P. 38.1(i), 44.2(b); *Hill*, 475 S.W.3d at 409; *see also Bina*, 2008 WL 256897, at *3.  Accordingly, we hold that any error by the trial court in excusing juror number five on the ground that she was disabled and replacing her with the alternate juror was harmless.  *See* TEX. R. APP. P. 44.2(b).

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Huddle, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).