Opinion issued January 31, 2008










 




     

In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00557-CR




CEYMA BINA, Appellant

v.

STATE OF TEXAS, Appellee




On Appeal from the 177th District Court 
Harris County, Texas
Trial Court Cause No. 1021470




MEMORANDUM OPINION 

          A jury convicted appellant, Ceyma Bina, of murder and assessed her
punishment at 50 years in prison and a $10,000 fine.


 In three issues, appellant
contends that the trial court (1) erred by dismissing a juror; (2) abused its discretion
by refusing to admit certain evidence; and (3) improperly denied appellant’s motion
to suppress her recorded statement.
          We affirm.
Background
          On March 28, 2005, Jimenez’s neighbor, B. McGruder, saw Jimenez and
appellant arrive at Jimenez’s apartment. About three or four hours later, McGruder
heard a thump on her door. When she opened it, Jimenez fell into her apartment
clutching his chest and bleeding. Jimenez stated, “She stabbed me.” McGruder
called 9-1-1 and helped Jimenez to the parking lot to wait for the ambulance. 
McGruder saw appellant leave the apartment complex. McGruder followed appellant
and convinced her to return to the scene to speak to the police. Appellant told
McGruder that she had thrown the knife in the bayou. She also told McGruder that
Jimenez had raped her. 
          Appellant spoke to the police at the scene and went to the police station. 
There, after being read the required statutory warnings, appellant waived her rights
and agreed to give a recorded statement. 
          In her statement, appellant described the events surrounding the stabbing. 
Appellant stated that she and Jimenez met about a year earlier when she was 17 years
old and he was 32. During that year, the two engaged in a sexual relationship, which
had been consensual until about a month earlier. Appellant stated that, the month
before, Jimenez had forced her to have intercourse against her will. Appellant did not
report the assault because she thought the police would not believe her.
          Appellant then explained that Jimenez had called earlier in evening and asked
to see her. Appellant agreed, and Jimenez picked her up at her house. The two ran
some errands and then went to Jimenez’s apartment. 
          According to appellant, Jimenez asked if she wanted to have sex, and she told
him “no.” Appellant claimed that Jimenez then threw her on his bed, removed her
pants, and sexually assaulted her. Appellant stated that, following the assault, she put
on her clothes and sat with Jimenez on the sofa. Appellant explained that she asked
Jimenez to take her home, but that Jimenez said “no” in a “very hateful way,” which
scared her. Appellant claimed that Jimenez told her he would take her home when
he was “through with her,” which appellant understood to mean that Jimenez planned
to sexually assault her again.
          Appellant explained that she became “upset” and “scared” because she thought
Jimenez planned to hurt her again. She reached into her purse, pulled out a knife, and
stabbed Jimenez in the chest. Jimenez got up and ran for the telephone. Appellant
described how she chased Jimenez, tried to stab him again, and pulled the telephone
cord from the wall to prevent Jimenez from calling 9-1-1. 
          Jimenez died as a result of appellant stabbing him in the chest.
          Appellant was indicted for murder. She filed a motion to suppress her audio-taped statement, contending that the statement had been involuntarily made. The trial
court denied the motion to suppress, and appellant’s statement was admitted at trial.
          The case was tried to a jury. The defense argued that appellant stabbed
Jimenez in self-defense relating to the sexual assault. The jury received an instruction
on self-defense, which it implicitly rejected when it found appellant guilty of murder. 
Disabled Juror
          In her first issue, appellant contends, “The trial court erred in dismissing Juror
Le, who was not statutorily disabled to serve as a juror in the case sub judice.”          After the jury was sworn in and before opening arguments, one of the
jurors—Juror Le—asked the trial court if he could withdraw from the jury. Juror Le
stated, “I think my English is not enough for a juror.” Juror Le explained that he can
read and write English, but that his English was “very limited.” He further explained
that, when the lawyers and court spoke quickly, he could not understand what was
being said. 
          On questioning by the defense, Juror Le stated that his English vocabulary was
limited primarily to his vocation in the automotive industry. Juror Le told defense
counsel that he had difficulty understanding him when defense counsel spoke of
“legal things.” 
          In addition to questioning by defense counsel, the trial court also questioned
Juror Le. Juror Le explained to the trial court that he was proud to be a juror, but,
when the attorneys and trial court spoke, “I don’t understand anything.” The trial
court noted that it was having difficulty understanding “everything” that Juror Le was
saying and that it was apparent that Juror Le was having difficulty understanding
much of what the trial court was saying to him. As a result, the trial court dismissed
Juror Le from the jury and replaced him with the alternate juror. The defense
generally objected to Juror Le’s dismissal and to proceeding with the alternate juror. 
The trial court overruled the objections. Trial then proceeded with 12 jurors,
including the alternate juror. 
          If a juror becomes disabled after the trial of a felony begins, the remaining
members of the jury may render a verdict. Tex. Code Crim. Proc. Ann. art. 36.29(a)
(Vernon Supp. 2007); Hill v. State, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002). A
juror is disabled if he has a physical illness, mental condition, or emotional state that
hinders his ability to perform his duties as a juror. Hill, 90 S.W.3d at 315; Landrum
v. State, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990). The court of criminal appeals
has specifically recognized that a disability for purposes of article 36.29 is not limited
to physical disease, but includes physical illness, mental conditions, emotional state,
or “any condition that inhibits a juror from fully and fairly performing the functions
of a juror.” Reyes v. State, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000); see Routier
v. State, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003).
          The determination of whether a juror is disabled lies within the sound
discretion of the trial court. Brooks v. State, 990 S.W.2d 278, 286 (Tex. Crim. App.
1999). “A trial court abuses its discretion when its decision lies outside the zone of
reasonable disagreement.” Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App.
2007).
          Here, the trial court implicitly concluded that Juror Le was disabled because
of his lack of proficiency in the English language, a condition which rendered him
unable to fairly and fully perform his duties as a juror. See Tex. Code Crim. Proc.
Ann. art. 36.29(a); Routier, 112 S.W.3d at 588. The record, as detailed above,
supports this conclusion. We hold that the trial court did not abuse its discretion by
dismissing Juror Le.
          Even if dismissing Juror Le had been error, it would be harmless error. The
erroneous dismissal of a juror is nonconstitutional error governed by Rule of
Appellate Procedure 44.2(b) Sneed v. State, 209 S.W.3d 782, 788 (Tex.
App.—Texarkana 2006, pet. ref’d). Rule 44.2(b) provides that “[a]ny other error,
defect, irregularity, or variance that does not affect substantial rights must be
disregarded.” Tex. R. App. P. 44.2(b). Therefore, we evaluate the harm of the
nonconstitutional error on the basis of whether it affected appellant’s substantial
rights. See id. A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury’s verdict or the fact finder’s
decision. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). 
          As mentioned, the trial court’s dismissal of Juror Le did not deprive appellant
of a 12-member jury. Even though appellant contends that it was error to dismiss the
original juror, there is no showing that the jury was not composed of 12 properly
selected members. See Chavez v. State, 91 S.W.3d 797, 801 (Tex. Crim. App. 2002). 
To the contrary, the record reflects that the alternate juror, who replaced Juror Le, was
subjected to the same selection process, was properly sworn, and heard all of the
evidence. 
          We note that, by analogy, if the trial court erroneously grants the State’s
challenge for cause during voir dire, we reverse only if the appellant shows that he
was deprived of a lawfully constituted jury. Sneed, 209 S.W.3d at 788 (citing
Feldman v. State, 71 S.W.3d 738 (Tex. Crim. App. 2002) and Jones v. State, 982
S.W.2d 386, 394 (Tex. Crim. App. 1998)). Here, the record does not reflect that
appellant was deprived of a lawfully constituted jury or that any of her substantial
rights were affected. Thus, if error, the trial court’s dismissal of Juror Le was
harmless error. See id.
          We overrule appellant’s first issue.
Evidentiary Arguments
          In her second issue, appellant contends, “The trial court denied the appellant
due process by failing to allow relevant admissible information regarding the type of
person the complainant was and how it related to the actions of appellant.”
A.      Conditions of Jimenez’s Community Supervision
          Appellant first complains that the trial court erred by excluding evidence of 
the conditions of the complainant, Raul Jimenez’s, community supervision. At trial,
appellant sought to admit a 1996 order from Victoria County, which adjudicated
Jimenez’s guilt for credit card abuse and placed him on community supervision. The
order indicated that Jimenez had originally been placed on deferred adjudication
community supervision in 1995 for the credit card abuse. The order further indicated
that, in 1996, the State moved to adjudicate Jimenez’s guilt because he had violated
certain terms of his deferred adjudication community supervision. The order states
that Jimenez pleaded “true” to the allegations in the State’s motion to adjudicate. As
a result, the Victoria County district court adjudicated Jimenez guilty of credit card
abuse and placed him on two years’ community supervision. 
          The conditions of Jimenez’s community supervision included a requirement
that he “submit to a polygraph and/or penile plethysmograph examination” and
limited Jimenez’s contact with children under the age of 17 years. Appellant sought
to admit this evidence at trial, asserting that these conditions of community
supervision indicated that Jimenez had engaged in some sort of sexual assault of a
child. Appellant did not dispute that the Victoria County documents did not
otherwise indicate that Jimenez had inappropriate sexual contact with a child, but
argued that the Victoria County court would not have placed such conditions on
Jimenez for credit card abuse unless he had committed some type of sexual assault
violation. Appellant asserted, as she does on appeal, that such evidence was
“probative and corroborative” of her defense that she had killed Jimenez because he
had sexually assaulted her.
          The trial court denied appellant’s request to admit the Victoria County
documents evidencing the conditions of Jimenez’s community supervision. 
Referencing the State’s argument that “[a]ny probative value is substantially
outweighed by the danger of unfair prejudice in this case,” the trial court stated, 
I think that’s where the problem lies, is that the probative value is so
nebulous, because we don’t know why these conditions were added. 
They are also relevant only to children, and there is no allegation here
of that. This information is extremely prejudicial, and I don’t think that
the slight probative value that it would have and the only probative
value it would have would be an inference. I’m going to exclude it
under [Rule] 403. I’m not going to allow it in. 
          An appellate court reviews a trial court’s decision to admit or exclude evidence
under an abuse of discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex.
Crim. App. 2001). The trial court does not abuse its discretion unless its
determination lies outside the zone of reasonable disagreement. See Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g).
          Here, the trial court had the discretion to exclude the documentary evidence 
detailing the conditions of Jimenez’s community supervision because the probative
value of the evidence was substantially outweighed by the danger of unfair prejudice
and confusion of the issues. See Tex. R. Evid. 403; Wiley v. State, 74 S.W.3d 399,
405 (Tex. Crim. App. 2002). Appellant sought to offer the Victoria County
documents to bolster her claim that she killed Jimenez in self-defense following the
sexual assault. On appeal, appellant points out that, at trial, “[t]he entire defensive
theory rested on appellant’s assertion that she was raped by [Jimenez].” (Emphasis
in original). 
          We recognize that, when a defendant in a homicide prosecution raises the issue
of self-defense, she may introduce evidence of the deceased’s violent character. Tex.
R. Evid. 404(a)(2); Torres v. State, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003). 
Specific acts of violence may be introduced to demonstrate the reasonableness of the
defendant’s fear of danger or to demonstrate that the deceased was the first aggressor. 
Torres, 117 S.W.3d at 894. Thus, appellant would have been permitted to admit
evidence of Jimenez’s violent character to show that he was the first aggressor, as she
claimed. 
          Here, appellant has not shown that the trial court’s Rule 403 ruling was
improper. The probative value of the conditions of Jimenez’s community supervision
contained in the proffered documents was slight because of the highly speculative
nature of such evidence. Without knowing the basis of the subject conditions of
community supervision, the jury would have been invited to engage in conjecture
regarding Jimenez’s past conduct. As a result, the probative value of the proffered
evidence was low, while the prejudicial effect of this emotionally-charged evidence
was high. That is, the record sufficiently supports a conclusion by the trial court that 
the slight probative value of the proffered evidence was substantially outweighed by
the danger of its unfair prejudice. See Tex. R. Evid. 403.
          Additionally, the proffered evidence posed a risk of confusion of the issues. 
See Wiley, 74 S.W.3d at 407–08 & n.21 (discussing and defining “confusion of the
issues” in evidentiary context). Evidence of the conditions of community supervision
would have drawn the jury into considering a factual dispute regarding whether
Jimenez had committed some act of sexual assault against a child, or whether the
community supervision conditions were placed on Jimenez for some other unknown
reason. Determination of such dispute would have sidetracked the jury into
considering matters only tangentially related to the factual dispute at issue and would
have invited the jury to base its verdict on emotion or prejudice. 
          We conclude that the trial court’s decision to exclude the proffered court
documents from Victoria County was within the zone of reasonable disagreement. 
Accordingly, we hold that the trial court’s exclusion of the documents was not an
abuse of discretion. 
B.      Abuse of Jimenez’s Child
          Appellant also complains in issue two that the trial court erred during the
punishment phase by denying appellant’s request to introduce evidence that
Jimenez’s son had been physically abused. At the start of the punishment phase, the
prosecutor told the trial court that the State’s first witness was the mother of
Jimenez’s six-year-old son. The prosecutor explained to the trial court that the
mother had, at some point, taken the boy to the hospital with some bruising. The
matter was referred to CPS and then to a family court. The prosecutor informed the
trial court that the family court had found the boy had been abused, but that Jimenez
was not the abuser. 
          The defense stated it was aware that the trial court was inclined to exclude
evidence of the boy’s abuse on the basis that it was not relevant. The defense
objected to the exclusion, asserting that the evidence “may be relevant on
punishment” and requesting that the defense be allowed “to explore it.” The trial
court denied appellant’s request, stating, “I find that evidence is completely irrelevant
since [Jimenez] was ruled out as the perpetrator, and that it’s extremely prejudicial.” 
          “Relevant” evidence in the punishment context is that which helps the jury
“tailor the sentence to the particular offense” and “tailor the sentence to the particular
defendant.” Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Despite
this broad definition, appellant has not shown how evidence of abuse of Jimenez’s
son by someone other than Jimenez had any relevance to the issue of appellant’s
punishment. Accordingly, the trial court was within its discretion to prohibit
appellant from offering evidence regarding the abuse.
          To the extent that appellant sought to admit evidence that Jimenez was
responsible for his son’s injuries, appellant made no offer of proof or bill of
exception. The boy’s mother was the State’s first witness in the punishment phase. 
Appellant made no request to create an offer of proof by cross-examining the mother
regarding the alleged abuse, nor did appellant otherwise make any other offer of proof
or bill of exception. 
          Error in the exclusion of evidence may not be urged unless the proponent
perfected an offer of proof or a bill of exceptions. Tex. R. Evid. 103(a)(2); Guidry
v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). Absent a showing of what such
testimony would have been, or an offer of a statement concerning what the excluded
evidence would show, nothing is presented for review. Tex. R. Evid. 103(a)(2);
Guidry, 9 S.W.3d at 153. Thus, any argument that the trial court erred by refusing to
allow appellant to admit evidence showing that Jimenez was responsible for his son’s
injuries was not preserved.


 
Motion to Suppress
          In her third issue, appellant contends that the trial court violated her right to
due process by denying her motion to suppress her recorded statement in which she
admitted to killing Jimenez.


 
A.      The Motion to Suppress Hearing
          With regard to her recorded statement, it is undisputed that (1) appellant was
informed of her Code of Criminal Procedure article 38.22 “Miranda” rights by
Houston police detective D. Shorten; (2) appellant told Detective Shorten that she
understood each of these rights; and (3) appellant affirmatively waived these rights
and gave a recorded statement. At the motion to suppress hearing, appellant argued
that she did not voluntarily waive her rights before giving her recorded statement
because she did not “comprehend” the warnings. Appellant asserted that, at the time
she waived her rights and made the statement, she was “traumatized,” “distraught,”
and “in shock” as a result of the earlier events of that evening. 
          At the hearing, appellant testified that, when she affirmatively told Officer
Shorten that she understood each of her rights, she “was just listening to what
[Officer Shorten] was saying and saying ‘Yes, ma’am’ just because I was in shock. 
I didn’t want to be bothered at that time. I was very upset.” Appellant repeatedly
testified that, at the time of the interview, she was “upset” and “in shock” and that she
did not understand the warnings that were given to her. Appellant claimed that, had
she understood the rights that were read to her, she would not have given the
statement.
          Detective Shorten, a sex crimes investigator, testified at the suppression
hearing. She related that appellant had told her that Jimenez had sexually assaulted
her earlier that evening. Detective Shorten testified that, at the time appellant gave
her recorded statement, appellant’s appearance was not consistent with someone who
had been sexually assaulted. 
          On cross-examination, Detective Shorten indicated that she had not tested
appellant’s comprehension of the warnings because there was no indication that
appellant did not understand the warnings. To the contrary, appellant had
affirmatively stated that she understood her rights and had agreed to make a recorded
statement.
          After hearing Detective Shorten’s and appellant’s testimony and the audio-taped statement, the trial court denied the motion to suppress, orally finding that the
statement had been given voluntarily. In its written findings of fact and conclusions
of law, the trial court found, in part, that “the Defendant’s testimony, given at trial
outside the Jury’s presence, has no credibility and carries no evidentiary value.” The
trial court concluded that appellant “knowingly, freely, and voluntarily waived each
of her rights read to her by Officer D.R. Shorten” and that appellant “freely and
voluntarily gave her statement without compulsion or persuasion.”
 
B.      Standard of Review
          We review a trial court’s ruling on a motion to suppress evidence pursuant to
an abuse of discretion standard. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex.
Crim. App. 1996). At a suppression hearing, the trial court is the sole fact-finder and
may choose to believe or disbelieve any or all of the witnesses’ testimony. State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We give almost total deference
to the trial court’s determination of historical facts when supported by the record,
particularly if the findings turn on witness credibility and demeanor. Id. at 856. We
give the same deference to determinations of mixed questions of law and fact if their
resolution depends upon witness credibility and demeanor. Id. In contrast, we review
issues that present purely legal questions pursuant to a de novo standard. Id. We
must view the record and all reasonable inferences therefrom in the light most
favorable to the ruling on the suppression motion, and sustain the ruling if it is
reasonably supported by the record and is correct under any theory of law applicable
to the case. Villarreal, 935 S.W.2d at 138.
C.      Voluntariness of Appellant’s Statement
          Appellant contends that the record does not support the trial court’s ruling that
her statement was made voluntarily. To be admissible, a confession must be
voluntarily given and free from coercion or improper influences. See Wyatt v. State,
23 S.W.3d 18, 23 (Tex. Crim. App. 2000). In determining the question of
voluntariness, a court should consider the totality of circumstances under which the
statement was obtained. Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App.
1997). The ultimate question is whether the appellant’s will was overborne. Id. at
856. A statement is involuntary “only if there was official, coercive conduct of such
a nature that any statement obtained thereby was unlikely to have been the product
of an essentially free and unconstrained choice by its maker.” Alvarado v. State, 912
S.W.2d 199, 211 (Tex. Crim. App. 1999).
          In asserting that her statement was not voluntarily given, appellant contends
on appeal that the questioning by Officer Shorten “was coercive, under the totality of
the circumstances, based upon the vulnerability of this rape victim.” Appellant also
criticizes the trial court’s findings by asserting that the findings “fail to acknowledge
that the entire basis for the suppression was that the trauma of being raped made it
absolutely impossible for the Appellant to have freely and knowingly given a
statement.” 
          Here, the trial court, as the sole finder of fact and judge of the credibility of the
witnesses at the suppression hearing, was entitled to disbelieve appellant regarding
her claims that she had been sexually assaulted and that she did not understand her
rights. See Ross, 32 S.W.3d at 855; Colgin v. State, 132 S.W.3d 526, 530 (Tex.
App.—Houston [1st Dist.] 2004, pet. ref’d). Viewing the totality of the
circumstances, the record supports the trial court’s credibility determination and its
conclusion that appellant’s statement was voluntary. See Wyatt, 23 S.W.3d at 24–25. 
          As discussed, the record shows that (1) appellant was given the required
statutory warnings, (2) appellant stated that she understood her rights, and (3)
appellant nonetheless waived her rights and made the statement. The record further
reflects that the trial court listened to the audio-taped statement at the suppression
hearing and that the trial court heard testimony from Detective Shorten regarding
appellant’s demeanor at the time of the statement. Moreover, we note that the trial
court’s finding that appellant’s testimony was not credible nor of evidentiary value
necessarily includes consideration of appellant’s testimony that she was sexually
assaulted and in such a distraught state that she could not understand the warnings
read to her. 
          We hold that no abuse of discretion has been shown with regard to the trial
court’s denial of appellant’s motion to suppress. Accordingly, we overrule
appellant’s third issue.
           

Conclusion
          We affirm the judgment of the trial court.
 
 

                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Nuchia, Hanks, and Higley.

Do not publish. See Tex. R. App. P. 47.2(b).