In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00157-CR**
_____

**JEFFREY MERRITT MCCUMBER JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. 28,302**

## OPINION

This case is on remand to our Court from the Texas Court of Criminal

Appeals. A jury convicted Jeffrey Merritt McCumber Jr. of continuous sexual abuse

of a young child, "Angie," and assessed punishment at sixty years of confinement.[1]

---

[1]We use pseudonyms to refer to the alleged victim, a minor child, and the child's family members. *See* Tex. Const. art. 1, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal judicial process").

*See* Tex. Penal Code Ann. § 21.02. In two issues, McCumber complained the trial court erred by: 1) allowing the outcry witness to testify remotely; and 2) denying his Motion for Mistrial when two jurors were released by the bailiff and replaced by alternate jurors. This Court reversed Appellant's convictions in an unpublished opinion on June 21, 2023. *See McCumber v. State*, No. 09-22-00157-CR, 2023 WL 4098960, at *10 (Tex. App.—Beaumont June 21, 2023) (mem. op., not designated for publication) (*McCumber I*). The trial court overruled Appellant's Confrontation Clause objection and allowed the outcry witness to testify via Zoom. *See id.* at *3. We held that "the trial court failed to make the required individualized findings on necessity[,]" and "the State failed to show that allowing [the outcry witness] to testify remotely was necessary to further an important public policy." *See id.* at *8 (citations omitted). We did not reach McCumber's second issue. *See id.* at *9.

The Court of Criminal Appeals granted discretionary review, and in a 4-3-2 decision, the plurality held that the trial court's necessity finding was sufficient and was justified by the witness's fear of retaliation and reversed our judgment. *See McCumber v. State*, 690 S.W.3d 686, 689 (Tex. 2024) (*McCumber II*). The Court remanded the cause to this Court for further proceedings. *See id.* at 694. We now address McCumber's second issue.

# I. BACKGROUND

We limit our background discussion to those facts necessary to resolve McCumber's second issue complaining that two regular jurors were improperly and inadvertently released then replaced with two alternates.

Voir dire began with the trial court's instructing the jury about the necessary qualifications to serve as a juror, including being a United States citizen, a citizen of Texas, and a citizen of Polk County. He also told them they must not be under indictment, be at least eighteen years of age, and be able to read and write English. He explained they "must be of sound mind and good moral character[,]" and "must not have served on a jury for six days in the preceding three months in county court or six days in the preceding six months in district court." The trial court then asked (1) if everyone met those qualifications, and (2) if anyone did not meet the qualifications. No potential jurors suggested they were unqualified.

The parties exercised their challenges and strikes, including strikes from two panels of potential alternates, after which the trial court seated a jury of twelve, plus two alternates. The record suggests that the two alternates were numbers 41 and 50.

After closing arguments, the jury retired to deliberate guilt at 9:37 a.m. and returned to the courtroom at 11:13 for the trial court to respond to three questions, then the jury resumed deliberations at 11:15 a.m. At this time, the trial court learned the bailiff had inadvertently excused two regular jurors who he mistakenly believed

3

were alternates, and thereafter the two who began the trial as alternates deliberated with the other ten jurors. The bailiff explained that he excused the "two at the end," and that nobody told him who the alternates were. After a brief discussion, the trial court stated, "So we dismissed two regular jurors and we're left with the two alternates[.]"

The State noted that the jurors themselves also did not know who the alternates were. The State explained that the alternates had been there since deliberations began. The State also asserted that both sides had "an opportunity to exercise a peremptory strike on the alternates or to raise a challenge for cause as to either of them. . . I don't see where there is any harm for them being substituted in, albeit inadvertently . . . to reach a decision." The State reiterated there was no harm since they were voir dired the same way as the other jurors, and both sides had opportunities to raise challenges for cause or to use peremptory strikes on them. The State further argued that the alternates participated in the deliberations from the beginning, including presumably being involved in sending the notes out to the trial court, and there would be no harm in allowing them to continue. The State continued, "unless there is some showing that they are back there and in some respect bias[ed] or prejudiced, disqualified, I don't see how there can be any assertion that there is any harm." The trial court agreed "that the whole 12 have been deliberating the whole time[.]"

McCumber objected to the two alternates being on the panel without showing that the two jurors seated among the original twelve, "that they were capable and competent to continue to deliberate."[2] The trial court overruled the objection, then McCumber moved for a mistrial, which the trial court denied.

The jury subsequently sent a note to the trial court conveying they disagreed over certain testimony regarding the specifics of one of the sexual assaults and requested certain testimony be read back to them. The trial court then had the reporter read the testimony into the record where Angie described McCumber forcing her to engage in a sex act. After reading the testimony, the judge sent the jury back to continue deliberations, and they returned less than fifteen minutes later with a guilty verdict. Neither side polled the jury.

## II. ANALYSIS

On remand, we address McCumber's second issue, in which he argues the trial court committed reversible error by denying his Motion for Mistrial when two regular jurors were inadvertently released by the bailiff and replaced by two alternate jurors. Specifically, he argues that "[s]ince the two jurors were not properly found to be disabled, the trial court committed constitutional error[.]" McCumber contends

---

[2]It appears from the record that counsel misspoke, but the record shows the trial court understood the objection to be that there had not been a showing that the two original jurors were incapable or incompetent to continue deliberations.

the two regular jurors were released in violation of Texas Constitution Article 5, section 13 and Texas Code of Criminal Procedure articles 33.011(b) and 36.29(c). *See* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 33.011. The State responds that absent a showing Appellant was deprived of a fair and impartial jury, his point of error cannot be sustained.

**Standard of Review**

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *See Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). Under an abuse of discretion standard, we do not substitute our judgment for the trial court's, instead we decide whether the trial court's decision was arbitrary or unreasonable. *See id.* A trial court abuses its discretion when no reasonable view of the record could support his ruling. *See id.*

**Law and Application**

First, we address McCumber's assertion the trial court violated Article V, section 13 of the Texas Constitution, which guarantees that in all District Court felony cases, petit juries "shall be composed of twelve persons[.]" Tex. Const. art. V, § 13. With respect to this argument, *Becerra* controls our analysis. *Becerra*, 685 S.W.3d at 120. In *Becerra*, the trial court inadvertently allowed an alternate juror to go into the jury deliberation room and participate in a vote on guilt with the twelve-member regular jury. *Id.* at 122. When the mistake was discovered, the alternate

6

juror was removed from the deliberation room. *Id*. at 123. On appeal, *Becerra* complained that the alternate juror's participation in deliberations violated Article V, section 13 of the Texas Constitution and articles 33.01, 33.011 and 36.22 of the Texas Code of Criminal Procedure. *See id*. at 127. Holding that Article V, section 13 was not violated, the Court of Criminal Appeals explained:

> Article V, sec. 13 of the Texas Constitution refers to the composition of the jury and uses the word 'composed' which refers to the formation of the jury. Article 33.01 is specifically titled 'Jury Size.' These provisions do not contain references to 'alternate jurors,' nor do they contain terms that suggest that an alternate juror becomes a member of the jury if he or she participates in a jury's 'ultimate verdict.' A jury is necessarily composed before it retires to deliberate.
>
> . . .
>
> It is only when the alternate juror replaces a member of the jury that the alternate juror can be said to be a member of the regular jury. The only way a district court runs afoul of the constitutional and statutory provisions setting the number of jurors is to impanel a jury of greater or fewer than twelve jurors in a felony case.

*Id*. at 129-30, 132. Here, the jury was composed of twelve jurors when the trial court impaneled twelve regular jurors and two alternate jurors. Later, when the jury retired to deliberate, two of the regular jurors were mistakenly released and replaced by the two alternate jurors, at which time the two alternate jurors "can be said to [have become] member[s] of the regular jury." *Id*. at 132. At that point, the jury was still composed of twelve members: ten who began as regular jurors and two who began as alternate jurors. It cannot be said that the original two continued to be members

7

of the jury after they were dismissed and replaced by the two alternates. Therefore, based on the record, the jury was at all times composed of twelve members.

In *Ponce v. State*, 68 S.W.3d 718 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd), after the jury had reached a verdict, and while the jury was being polled, the court discovered that "[o]ne juror who had been charged was absent, and it became apparent the alternate juror had served in his place. After an off-record bench conference, the court continued polling the jury, including the alternate, and then excused the jury." *Id.* at 720. On appeal, Ponce argued that replacing the regular juror with the alternate after the jury was charged violated Article V, section 13 of the Texas Constitution and articles 33.011 and 36.029 of the Texas Code of Criminal Procedure and that the trial court erred in overruling his motions for mistrial and new trial. *Id.* at 719. The Court of Appeals disagreed, explaining, "Since the trial court in this case placed the alternate on the jury before the jury retired, the alternate did not lose his ability to exercise the same functions and powers as any other juror. The issue, therefore, is in failing to follow the method of constituting the jury set by the legislature, not in failing to provide a twelve-person jury." *Id.* at 721. *See also Hill v. State*, 475 S.W.3d 407, 409 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("Even though it was error to dismiss the original juror, the jury was composed of 12 properly selected members.").

It is noteworthy that in *Becerra*, a total of thirteen people actually participated in deliberations, at least for a time, and all thirteen participated in a vote on the defendant's guilt or innocence, yet the Court of Criminal Appeals held that Article V, section 13 was not violated because the regular jury was always "composed" of twelve members. *Becerra*, 685 S.W.3d at 134. At no time did the jury in this case consist of more or less than twelve jurors, and at no time were there more or less than twelve people participating in deliberations or voting on McCumber's guilt or innocence or punishment. Therefore, we hold the trial court did not violate the twelve-juror requirement of Article V, section 13 of the Texas Constitution when it overruled McCumber's objection and motion for mistrial and allowed the jury to continue its deliberations and reach its verdict with respect to guilt and punishment.

Next, we address McCumber's assertion the trial court violated Texas Code of Criminal Procedure article 33.011, which provides,

> (a) In district courts, the judge may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. In county courts, the judge may direct that not more than two jurors in addition to the regular jury be called and impaneled to sit as alternate jurors.
>
> (b) Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties. Alternate jurors shall be drawn and selected in the same manner, shall have the

9

same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment.

Tex. Code Crim. Proc. Ann. art. 33.011. Although the trial court complied with the statute's requirements regarding selection and qualification of alternate jurors, we agree with McCumber that the trial court erred when it permitted two alternate jurors to replace two regular jurors without making a finding, supported by the record, that the regular jurors were unable or disqualified to perform their duties. *Scales v. State*, 380 S.W.3d 780, 784 (Tex. Crim. App. 2012).

The dissent asserts, "Absent a determination that the two sitting jurors the bailiff dismissed were disabled or disqualified, then replacing them, the two alternates did not become members of the regular jury in accordance with the process set forth in Texas Code of Criminal Procedure article 33.011(b)." (Citing *Becerra*, 685 S.W.3d at 131). But no juror was dismissed in *Becerra*, so the court was not faced with the question whether alternates become regular jurors when they take the place of jurors who are dismissed without the requisite findings. Instead, the issue was whether an alternate became a thirteenth juror by virtue of being present and participating in deliberations with twelve regular jurors, none of whom was dismissed at any time during the trial. In reaching the conclusion that the alternate

10

did not become a thirteenth juror, the Texas Court of Criminal Appeals held, "It is only when the alternate juror replaces a member of the jury that the alternate juror can be said to be a member of the regular jury." *Id*. at 132. Applying this holding to the facts of our case, we conclude the two alternates became members of the regular jury when they replaced the two regular jurors who were dismissed.

We acknowledge *Becerra* also includes language, relied on by the dissent, that "[a]n alternate juror is not a member of the regular jury until a trial court makes the determination that a sitting juror is disabled or disqualified and the trial court then replaces a sitting juror who becomes unable to perform his or her duties with an alternate juror." *Id*. at 131. But, for the reasons above, we conclude the additional language included in this expanded formulation of *Becerra*'s actual holding is dicta.

We also acknowledge the trial court did not make the requisite findings to replace jurors in this case, and we agree this was error. But to conclude that the alternates did not replace the regular jurors in this case would be to ignore the record before us which shows that at the conclusion of closing arguments two jurors were released and two alternates took their place. It would also change the issue before us because McCumber does not assert the two alternates never became regular jurors. Rather, McCumber's second issue asserts, "The trial court committed reversible error by denying Appellant's motion for mistrial when two jurors had been released by the bailiff and *replaced* by alternate jurors." (Emphasis added). We agree with

11

McCumber the replacement was error in the absence of the required findings, but as discussed below, we hold such error was harmless.

Next, we address McCumber's assertion that the trial court's error in this case amounted to constitutional error, requiring reversal "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). The Sixth Amendment to the United States Constitution provides the right of the accused to an impartial jury. *See Duncan v. Louisiana*, 391 U.S. 145, 152-53 (1968) ("Objections to the Constitution because of the absence of a bill of rights were met by the immediate submission and adoption of the Bill of Rights. Included was the Sixth Amendment which, among other things, provided: 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.'") (internal citations omitted). *Id*. "The right embodied in this clause of the Sixth Amendment is one that, under the Due Process Clause of the Fourteenth Amendment, states may not deny. But the constitutional right to trial by an impartial jury is not violated by every error in the selection of a jury." *Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998) (citing *Duncan*, 391 U.S. 145).

When a trial court fails to follow the statutory procedures for replacing a regular juror with an alternate juror, the error is "not of constitutional dimension." *Hill*, 475 S.W.3d at 408; *Sneed v. State*, 209 S.W.3d 782, 788 (Tex. App.—

12

Texarkana 2006, pet. ref'd); *Ponce*, 68 S.W.3d at 721. Because this case does not involve constitutional error, we apply the standard set forth in Texas Rule of Appellate Procedure 44.2(b) and must disregard the error unless it affected McCumber's substantial rights. Tex. R. App. P. 44.2(b); *see Scales*, 380 S.W.3d at 787 (applying Rule 44.2(b) when reviewing a violation of article 33.011). "An error affects substantial rights only if it has a substantial or injurious effect in determining the jury's verdict." *Becerra*, 685 S.W.3d at 144 (citations omitted). If, after examining the whole record, a court has "fair assurance that the error did not influence the jury, or had but a slight effect, a reviewing court should not overturn the conviction." *Id*. (citation omitted). Neither party has the burden to demonstrate whether the appellant was harmed; rather, it is the appellate court's responsibility to assess harm based on a review of the record. *See id*. at 139 (citation omitted).

We begin our harm analysis with the observation that "a defendant has no right that any particular individual serve on the jury. The defendant's only substantial right is that the jurors who do serve be qualified." *Jones*, 982 S.W.2d at 393. Appellate courts, including this Court, have held that erroneous substitution of jurors is harmless and does not affect a defendant's substantial rights "where: (1) the record shows the alternate juror seated in the discharged juror's place was subjected to the same selection process, properly sworn, heard all of the evidence, heard the trial court's charge, and seated before the jury retired; and (2) the record does not

13

show any taint from the alternate juror seated in the discharged juror's place." *Delarosa v. State*, Nos. 05-11-00312-CR, 05-11-00313-CR, 05-11-00314-CR, 2013 Tex. App. LEXIS 3532, at \*4 (Tex. App.—Dallas Mar. 26, 2013, no pet.) (mem. op., not designated for publication); *Harrison v. State*, Nos. 09-16-00329-CR, 09-16-00330-CR, 2017 Tex. App. LEXIS 7238, at \*6 (Tex. App.—Beaumont Aug. 2, 2017, no pet.) (mem. op., not designated for publication); *Hill*, 475 S.W.3d at 409; *Whitehead v. State*, 437 S.W.3d 547, 556 (Tex. App.—Texarkana 2014, pet. ref'd); *Sneed*, 209 S.W.3d at 788; *Ponce*, 68 S.W.3d at 722; *Guajardo v. State*, Nos. 05-15-00365-CR, 05-15-01302-CR, 2016 Tex. App. LEXIS 4124, at \*10 (Tex. App.—Dallas Apr. 20, 2016, no pet.) (mem. op., not designated for publication); *Bina v. State*, No. 01-06-00557-CR, 2008 Tex. App. LEXIS 667, at \*7 (Tex. App.—Houston [1st Dist.] Jan. 31, 2008, pet. ref'd) (mem. op., not designated for publication).

The record in this case indicates the two alternate jurors were examined and selected in the same way as the regular jurors. At the conclusion of voir dire, each side was allowed two additional peremptory strikes for the purpose of selecting alternate jurors, one strike for each of the two groups of three panel members from whom the potential alternate jurors would be selected. After the attorneys exercised their strikes, the clerk called fourteen names without indicating which twelve were regular jurors and which two were alternate jurors. All fourteen then took the same

14

oath, received the same admonitory instructions, heard the same evidence, received the same charge from the court, and heard the same arguments of counsel. Pursuant to article 33.011(b), the two jurors who began as alternates had "the same functions, powers, facilities, security, and privileges as regular jurors." Tex. Code Crim. Proc. Ann. art. 33.011(b). Throughout the trial the alternate jurors were indistinguishable from the regular jurors. *See U.S. v. Olano*, 507 U.S. 725, 740 (1993) (finding two alternate jurors were "indistinguishable" from twelve regular jurors under similar circumstances).

The record does not indicate any taint from the two jurors who began the trial as alternate jurors and finished the trial as regular jurors. Therefore, we conclude McCumber's substantial rights were not affected, and the trial court's error in replacing the two regular jurors with the two alternates without satisfying the requirements of article 33.011(b) was harmless and must be disregarded. Tex. R. App. P. 44.2(b).

Lastly, we address McCumber's assertion the trial court violated Texas Code of Criminal Procedure article 36.29(c), which provides,

> After the charge of the court is read to the jury, if a juror becomes so sick as to prevent the continuance of the juror's duty and an alternate juror is not available, or if any accident of circumstance occurs to prevent the jury from being kept together under circumstances under which the law or the instructions of the court requires that the jury be kept together, the jury shall be discharged, except that on agreement on the record by the defendant, the defendant's counsel, and the attorney

15

representing the state 11 members of a jury may render a verdict and, if punishment is to be assessed by the jury, assess punishment. If a verdict is rendered by less than the whole number of the jury, each member of the jury shall sign the verdict.

Tex. Code Crim. Proc. Ann. art. 36.29(c). In the absence of an agreement between the defendant and the State, article 36.29(c) requires a trial court to discharge a jury when either of two conditions occur after the charge is read to the jury: (1) a juror becomes too sick to continue and no alternates are available, or (2) circumstances prevent the jury from being kept together when the law or the court's instructions require the jury to be kept together. Neither condition occurred in this case. No juror became sick. After the charge was read, the twelve original jurors (and two alternates) were kept together during closing arguments. At the conclusion of the arguments, although the membership of the jury changed, the jury (as it was then composed) was kept together throughout deliberations resulting in the rendition of a guilty verdict, followed the punishment stage, further deliberations, and ultimately rendition of a verdict on punishment. Because article 36.29(c) was never triggered, it was not necessary for the trial court to discharge the jury.

### III. CONCLUSION

We conclude that, although the trial court erred in allowing two regular jurors to be replaced by two alternates without a showing of inability or disqualification, the error was harmless because the record indicates the alternates were functionally

16

indistinguishable from the original jurors they replaced. Therefore, the trial court did not abuse its discretion when it denied McCumber's motion for mistrial. We overrule McCumber's second issue.

Having overruled McCumber's second issue, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on August 8, 2024
Opinion Delivered December 11, 2024
Publish

Before Golemon, C.J., Wright and Chambers, JJ.

17

**DISSENTING OPINION**

The Majority holds the trial court did not abuse its discretion when it denied McCumber's motion for mistrial. Because I would hold that the trial court committed harmful non-constitutional error, I respectfully dissent.

The Texas Constitution guarantees that in all District Court felony cases, petit juries "shall be composed of twelve persons[.]" Tex. Const. art. V, § 13. Texas Code of Criminal Procedure article 33.011 provides,

> (a) In district courts, the judge may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. In county courts, the judge may direct that not more than two jurors in addition to the regular jury be called and impaneled to sit as alternate jurors.
>
> (b) Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties. Alternate jurors shall be drawn and selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment.

Tex. Code Crim. Proc. Ann. art. 33.011. Further article 36.29(c) instructs,

> After the charge of the court is read to the jury, if a juror becomes so sick as to prevent the continuance of the juror's duty and an alternate juror is not available, or if any accident of circumstance occurs to

1

prevent the jury from being kept together under circumstances under which the law or the instructions of the court requires that the jury be kept together, the jury shall be discharged, except that on agreement on the record by the defendant, the defendant's counsel, and the attorney representing the state 11 members of a jury may render a verdict and, if punishment is to be assessed by the jury, assess punishment. If a verdict is rendered by less than the whole number of the jury, each member of the jury shall sign the verdict.

*Id.* art. 36.29(c).

The Court of Criminal Appeals recently decided *Becerra v. State*, which the Majority agrees controls our disposition of this matter. *See* 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). In *Becerra*, the Court of Criminal Appeals held that sending the alternate juror back to deliberate with the twelve jurors constituted a statutory error and remanded the case for a statutory harm analysis. *See id.* at 122.

The Court explained that "composed" used in Texas Constitution Article V, section 13 "refers to the formation of the jury." *Id.* at 129. The Court added that "[a] jury is necessarily composed before it retires to deliberate." *Id.* at 130. In discussing article 33.011 entitled "Alternate Jurors," the Court explained that "the context of the statute makes clear that the jurors are not considered part of the 'regular jury.'" *Id.* at 131 (quoting Tex. Code Crim. Proc. Ann. art. 33.011(a)). The Court noted that the alternates sit "'in addition' to the regular jury" and the statute "clarifies that they are 'alternate jurors.'" *Id.* (quoting Tex. Code Crim. Proc. Ann. art. 33.011(a)). The Court in *Becerra* determined, "An alternate juror is not a member of the regular jury

2

until a trial court makes the determination that a sitting juror is disabled or disqualified and the trial court then replaces a sitting juror who becomes unable to perform his or her duties with an alternate juror." *Id.* (citing *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012)) (other citations omitted). This seemingly reflects a two-step process: (1) the trial court must determine a sitting juror is disabled or disqualified; and (2) then, the trial court will then replace the sitting juror who becomes unable to perform his or her duties with an alternate. *See id.*

The record before us demonstrates that when the jury was empaneled, it was "composed" of twelve jurors, thus satisfying Article V, section 13. *See* Tex. Const. art. V, § 13; *Becerra*, 685 S.W.3d at 129–30. Later, the bailiff mistakenly released the two regular jurors when the jury retired to deliberate. At that juncture, the jury of twelve had already been composed. *See Becerra*, 685 S.W.3d at 129–30. Even so, the trial court did not first determine that the two sitting jurors were disabled or disqualified, then replace them with alternate jurors. *See id.* at 131; *see also* Tex. Code Crim. Proc. Ann. art. 33.011(b). Rather, the bailiff inadvertently dismissed the two sitting jurors without the trial court realizing it happened until after deliberations were almost concluded. Absent a determination that the two sitting jurors the bailiff dismissed were disabled or disqualified, then replacing them, the two alternates did not become members of the regular jury in accordance with the process set forth in Texas Code of Criminal Procedure article 33.011(b). *See Becerra*, 685 S.W.3d at

3

131. When the trial court empaneled the jury, there were twelve regular sitting jurors, thus the petit jury was "composed" of the constitutionally required twelve members. *See id.* at 129–30; *see also* Tex. Const. art. V, § 13.

"When . . . one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict[.]" Tex. Const. art. V, § 13. That provision does not set forth any procedures that "must be adhered to following the dismissal." *Chavez v. State*, 91 S.W.3d 797, 801 (Tex. Crim. App. 2002). The statutes violated in this case are meant to protect a constitutional right to a twelve-member jury by providing procedures for dismissing jurors and replacing them with alternates. *See id.* at 800 ("The failure of a trial court to adhere to a statutory procedure related to a constitutional provision is a violation of the statute, not a violation of the constitutional provision itself.").

Article 36.29 requires that "if any accident of circumstance occurs to prevent the jury from being kept together under circumstances under which the law or the instructions of the court requires that the jury be kept together, the jury shall be discharged[.]" *See* Tex. Code Crim. Proc. Ann. art. 36.29. That provision allows for an exception and a verdict to be rendered by eleven jurors if the defendant, defense counsel, and counsel for the State agree on the record in some cases. *See id.* The record here shows that there were only ten regular jury members present, and the

4

record further shows that the parties did not agree. *See id.* Therefore, the jury should have been discharged. *See id.*

Since the jury when empaneled was "composed" of twelve sitting jurors, it did not violate Article V, section 13, and thus did not constitute constitutional error. *See* Tex. Const. art. V, § 13; *Becerra*, 685 S.W.3d at 129–30. But this record reveals the trial court committed non-constitutional error in two respects by: (1) failing to determine two sitting jurors were disabled or disqualified, then failing to replace them with alternate jurors in violation of article 33.011; and (2) failing to discharge a jury where accident or circumstances prevent them from being kept together. *See id.* arts. 33.011(b), 36.29.

When the record reveals non-constitutional errors, we must conduct a harm analysis under Rule 44.2(b). *See* Tex. R. App. P. 44.2(b); *Becerra*, 685 S.W.3d at 140 (explaining that a statutory violation of article 36.29 is subject to a 44.2(b) harm analysis). Rule 44.2(b) requires us to disregard any error "that does not affect substantial rights." Tex. R. App. P. 44.2(a); *see Becerra*, 685 S.W.3d at 144. "An error affects substantial rights only if it has a substantial or injurious effect in determining the jury's verdict." *Becerra*, 685 S.W.3d at 144 (citations omitted). If, after examining the whole record, a court has "fair assurance that the error did not influence the jury, or had but a slight effect, a reviewing court should not overturn the conviction." *Id.* (citation omitted). It is the appellate court's responsibility to

5

assess harm after reviewing the record, and neither party has the burden to demonstrate whether the appellant was harmed. *See id.* at 139 (citation omitted).

The record before us shows that there were disagreements among the jurors about the victim's testimony and whether a specific type of sexual assault occurred. This disagreement required that certain testimony be read back to the jury. The jury was not polled. The record does not reveal what role the alternate jurors might have played in the deliberations, although they retired with the ten sitting jurors when deliberations began. Based on our examination of this record as a whole, it is impossible for us to have fair assurance that the error did not influence the sitting members of the regular jury or only had but slight effect. *See id.* at 144; *see also* Tex. R. App. P. 44.2(b). Without this assurance, I would hold that the error affected McCumber's substantial rights. *See* Tex. R. App. P. 44.2(b). Because the Majority finds no harmful error, I respectfully dissent.

W. SCOTT GOLEMON
Chief Justice

Dissent Delivered
December 11, 2024

6